By the Court,
Beardsley, J.
If this should be regarded as an ordinary case between debtor and creditor, the plaintiff was clearly entitled to recover. Viewed in that light, the de *130 fendants wereliis debtors to the amount claimed in the suit, and which, so far as I see, has not been in any manner paid off. satisfied or discharged.
The only mode in which satisfaction is pretended to have been made is by the bill of exchange of Brooks, Brothers &■ Co., which the defendants transmitted to the plaintiff in February, 1837. But the mere receipt of this bill by the plaintiff did not cancel the previous indebtedness of the defendants, and it docs not appear there was any agreement that such should be its effect. On the contrary, the plaintiff received the bill to be placed to the credit of the defendants “ at maturity,” or, in other words, when actually paid to him. There has been no lache on the part of the plaintiff which would charge him with the amount of the bill, and I am unable to perceive any ground on which it can be held to have been a satisfaction of the pre-existent debt
It is settled that the acceptance of the bill or note of a third person does not cancel a previous debt, unless it is agreed to be received in absolute payment and satisfaction. Subsequent events may charge the creditor with the amount of the bill or note; as where he neglects to make demand and give notice, by which the security of some of the parties is lost, or where, without the assent of the debtor from whom it was received, the bill or note is cancelled on receiving other security in its stead. But the mere acceptance of a bill, as was the case here, has, I believe, never been deemed to be a payment of a previous debt. (Olcott v. Rathbun, 5 Wend. 490; New- York State Bank v. Fletcher, id. 85; Muldon v. Whitlock, 1 Cowen, 290; Artcher v. Zeh, 5 Hill, 200; Waydell v. Luer, id 448; Tobey v. Barber, 5 Johns. Rep. 88; Smith v. Rogers, 17 id. 340; Dayton v. Trull, 23 Wend. 345.) The case, however, was not argued as one simply between debtor and creditor, to be disposed of as the fact of payment might or might not be established, but as a transaction between principal and agent, and to be governed by the law applicable to that relation ; and this, I agree, is the aspect in which it should be regarded.
The money was received by the defendants as agents for the *131 plaintiff, they being fully authorized for that purpose, It was in their hands, with the responsibilities and the rights of agents, and was not money for which they were at once liable to be sued as debtors. No cause of action arose against them by the mere receipt of the money; but a demand and refusal to pay, or some misapplication of the money, or some violation of orders, was necessary to be shown, before any right of action would be established in favor of the plaintiff.(a)
It does not appear what express directions, if any, were given by the plaintiff, as to the mode of transmitting the money to him when received by the defendants. But it may fairly be inferred I think that they were expressly directed to remit the money by a bill of exchange, or, if left without express instructions, that they were fully authorized so to remit, such being the usual course in business of that description, (3 Chitty's Com. Law, 215; Story On Ag. §§ 60, 77, 96, 199.)
On receiving the money, the defendants sent the.bill of exchange of Brooks, Brothers & Co. to the plaintiff, for the purpose of paying or providing for the payment of the amount in their hands. The bill was not payable on demand, but at sixty days after sight. If the defendants, however, had not previously been authorized to remit by a bill at sixty days, the plaintiff may fairly be said to have ratified this act of his agents. In this respect he acted with full knowledge of what the agents had done, and he did not object that they were unauthorized to remit by bill, or that the bill should have been payable at an earlier day; and he ought not now to be allowed to start such an 'objection.
But, beyond this, I see nothing which can aid the defendants on the principle of a ratification of their.acts. If in other respects they violated their instructions, it is not shown that the plaintiff has in any manner waived his rights, or affirmed their unauthorized acts.
An act wholly unauthorized at- the time may unquestionably he adopted so as to bind the party for whom it was assumed to *132 be done ; and this, as to such party, would, for every purpose, be equivalent to its original authorization. In this manner an agent may be absolved by'his principal from the consequences of his own misconduct. But ratification is an act with knowledge, and must be unequivocal in its character. Nothing like this appears in the present case, and no act of the principal, in ignorance of the misconduct of his agent, can, as to the latter, amount to a ratification, or relieve him from the responsibility he has thus incurred.
The case then must be decided now as it would have been at the moment the bill came to the hands of the plaintiff. If it was then a payment to him of the money received by the defendants, it is so now : and if it was not a payment then, the amount is still unsatisfied. Nothing has since occurred to change the rights or liabilities of the respective parties.
The defendants had received money for the plaintiff, and I assume that they were expressly directed to remit it by a bill of exchange, or, such being the usage in business of this description, that they were, in the absence of express instructions, authorized on that ground thus to remit the money. If express orders were given, they must have been to purchase a bill and forward it to the principal; and if an authority to remit by bill is to be inferred, it must be an authority to the same effect. The direction would be to invest the money of the principal in a bill of exchange, and send that to him, that he might in this way receive what was his due. No principal would have directed his agent otherwise. He would not have directed the purchase of a bill on credit, but, on the contrary, would have directed it to be paid for out of his own money in the hands of the agent. Such an order the principal would have a right to give, and obedience to it would be the duty of .the agent. If obeyed in good faith, the agent would be exonerated from all liability for- the money, whatever the result might be. Money thus paid out by the agent, would be paid for the benefit of the principal, and would, in law, be equivalent to a direct payment to the principal. A bill thus purchased would be his property; *133 and if a loss occurred by the fail me of the parties to the bill, it would be the loss of the principal, and not of the agent.
But in the present case, instead Of investing the plaintiff’s money in a bill of exchange, as should have been done, the defendants applied it to their awn use. This act was wholly unauthorized, and as it has never been ratified by the plaintiff, the defendants are still responsible, unless they have in some manner cancelled the claim founded on the double ground of a violation of orders and an unauthorized use of the money of their principal.
It was said on the argument, however, that this claim was extinguished by the bill of exchange of Brooks, Brothers & Co., and it was urged that sending this bill to the plaintiff was equivalent to an investment of his own money in a good bill, and remitting that to him in the usual.way.
The bill sent to the plaintiff was purchased by the defendants with their own credit, and not with the money of their principal then in their hands. They purchased it at a premium of eleven and a half per cent, because they' bought on credit, the cash premium being but ten per cent. It-is true, the defendants charged the plaintiff a premium of ten per cent only, so that, in this respect, he was not injured by the extra premium agreed to be paid by tire defendants; and the price paid and the price charged are only material to be noted, as showing, beyond all question, that the bill, when purchased, belonged to the defendants, and not to the plaintiff.
But the use of the plaintiff’s money by the defendants, and this purchase of a bill by their own credit, as a substitute for the plaintiff’s money, were plainly not in conformity with any orders the principal had given to his agents. His money was not paid out for the bill, but took a different direction. The purchase of the bill was not an act of the defendants as agents, but was their own individual concern. The bill bought was not the plaintiff’s property, when purchased ; and it may well be asked, when and how did he make it his own 1 It was sent as a mode of remitting the money to him, and he received it, not as payment, but to be such when payment was actually made.
*134 When the bill came to the plaintiff’s hands, he was ignorant of the manner in which it had been procured, although he had a right to infer that it had been purchased with his own funds. The bill turned out to be worthless, and as soon as the plaintiff learned that his money had been used by his agéuts for their own benefit, and that the bill sent to him was their property, and not his, that it had been bought by their note, and not with his money, he repudiated the whole transaction, and called upon them for payment.
Had the defendants, when they sent the bill to the plaintiff, apprised him of what had been done, and he had remained silent, his acquiescence might have been conclusive against him. (Prince v. Clark., 1 Barn. & Cres. 186.) But such intelligence was not communicated to the plaintiff. He doubtless believed at the time, as he had a right to do, that his own money had been paid out for the bill, and his claim is not impaired or affected by any thing which has since occurred.
Had the truth been disclosed to the plaintiff"when the bill first came to his hands, he undoubtedly might have refused to receive it, and the defendants would have been bound to make immediate payment. They had used his money without authority, for which a bill owned by the defendants was sent to him as though it had been his own property. The plaintiff’ never agreed to purchase this bill of the defendants, and if it was theirs when received by the plaintiff, as it surely was, it is theirs still. There has been no change of title since. The bill was received in ignorance of the manner in which it had been procured, and of the fact that the defendants had, in violation of their duty, appropriated the money in their hands to their own use. "When the truth came to his knowledge, the plaintiff' repudiated every thing in relation to the bill, and demanded payment of his money, as in my opinion he had full right to do. It is the first and the highest duty of an agent to ¿idhere faithfully to the orders of his principal, and any deviation in this respect will make him responsible for the consequences. It will not aid the agent that he intended no injury to his principal, nor even that he intended the act to be a positive benefit to *135 him. The question in such cases is, not whether the agent acted from good motives and without fraud, but whether he acted in conformity with his instructions. (Story On Ag. §§ 192, 199; Manella v. Barry, 3 Cranch, 439; Beawes' Lex Mer. 44, 46; 3 Chit. Com. Law, 215; Paley On Ag. 3; Catlin v. Bell, 4 Camp. 183.)
The law will not permit an agent to violate his instructions with impunity, or to use the property of his principal in any manner for his own profit. “ No man should be allowed to have an interest against his duty.” (Thompson v. Havelock, 1 Camp. 527.)
If he trades with money or property which he holds as agent, and makes a profit thereby, he must account for it to his principal. (Paley On Ag. 3, 4; Stoi'y On Ag. §§ 192, 207, 214, 340; 3. Chitty's- Com.. Law, 216; Diploch v. Blackburn, 3 Camp. 43.)
If he deposits the money of his principal, in his own name, with a banker who becomes insolvent, the agent must bear the loss. (Story On Ag. §§ 200, 208, 218; Massey v. Banner, 4 Madd. Rep. 413; Wren v. Kirton, 11 Ves. 378; 3 Chitty's Com. Law, 215; Macdonnell v. Harding, 7 Sim. 178; Paley On Ag. 46.) If employed to make purchases, the agent cannot buy of himself. (Paley On Ag. 33, 37; Massey v. Davies, 2 Ves. 318; 3 Chitty's Com. Law, 217.)
These defendants were authorized to purchase a bill of exchange for the plaintiff, with his own money then in their hands, but instead of this they forwarded to him a bill of which they were themselves the owners; one which they had purchased with their own means at one price, but which they charged to the plaintiff at another. It was in reality an effort to put off to the plaintiff, without apprising him of the truth, a bill of exchange of which the defendants were owners. They should have informed their principal that the bill was their property, not his ; when he would have exercised his own judgment in accepting or refusing it,
An agent authorized to sell cannot barter the property of his principal. If he is limited as to the price, he makes himself *136 liable by selling below the sum. fixed. And if directed to sell for cash, he cannot give credit. (Paley On Ag. 25, 26, 39; 3 Chitty's Com. Law, 218, 219; Guerreiro v. Peile, 3 Barn. & Ald. 616.)
It is said that the defendants did no injury to the plaintiff by using his money for their own purpose, as they sent to him what was regarded at the time as a good bill of exchange to pay for it. The bill, it is urged, was purchased bona fide, of a house in good credit, and it could make no difference to the plaintiff that it was paid for by a note, and not with his money. But the answer to this is, that what the agents did Avas a violation of orders, and consequently a breach of duty. They converted his money to their own use without authority, and he noAv calls upon them for it. In such a case it is not material to inquire whether any thing aauis lost by Avhat the agent did in regard to another -matter, or Avhether he acted in good faith. He cannot raise these questions in answer to a claim upon him founded on a violation of orders. Every excess of authority is at the hazard of the agent. He is entitled to his stipulated compensation, but to nothing more. The haw is justly jealous of every effort to make an additional profit to himself in transacting the business of his employer.
I feel no disposition to relax the restraints AA'hich the Iuav has, most wisely in my opinion, imposed on agents. They are constantly and extensiveljr employed in the most important and delicate concerns of life. Much the larger share of the active business of the Avorld is transacted through the medium of agents." They are objects of an honorable confidence Avhich should never be violated. Their duty is plain. If orders are given they should be obeyed. If the skill and judgment of the agent are to be his guides, let them be exerted and exercised in good faith, and in conformity Avith the known and approved usage in similar cases. These simple rules cover his AA-hole duty.
It can never be right to violate the lawful orders of an employer : but it is a grievous Avrong to do so Avith a vierv to one’s oavii profit. Here the defendants, instead of investing the plaintiff’s money in a bill of exchange, applied it to their own use. *137 By this act they made themselves liable to an action for the money, and that liability is still uncancelled. They are wrongdoers, and should bear the loss. (Short v. Skipwith, 1 Brockenb. 108.)
In my opinion the judgment of the superior court should be reversed, and a venire de novo issued.
Ordered accordingly.

 See Lillie v. Hoyt, (5 Hill, 395.)